FRED SCHROEDER

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed April 16, 1902.*

| 196 | 211 |
| 110a | ³282 |
| 110a | 294 |
| 196 | 211 |
| 211 | ³169 |

1. ROBBERY—*conviction may be sustained though proof of character and denominations of money are not strict.* The gist of the crime of robbery is the force or intimidation and the felonious taking from the person of another money or other thing of value against his will, and hence a conviction will not be reversed although the proof of the character and denominations of the money taken might not be sufficient to sustain a conviction for larceny.

2. SAME—*when conviction will not be reversed as against the weight of evidence.* A conviction of the crime of robbery, based upon the identification of the accused as complete and unequivocal as one witness could make it, will not necessarily be reversed because three witnesses testified to facts tending to establish an *alibi.*

3. SAME—*when conviction will not be reversed for improper conduct of prosecuting attorney.* If the evidence, under proper instructions, is sufficient to sustain a conviction of the crime of robbery, the persistent attempts of the assistant State's attorney, in cross-examining the accused to show, notwithstanding the adverse rulings of the court, that the accused was living in an open state of adultery with the woman with whom he boarded, is not ground for reversal, where the rulings of the court were correct.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

SAMUEL H. TRUDE, for plaintiff in error.

CHARLES S. DENEEN, State's Attorney, and F. L. BARNETT, for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

This writ of error was sued out to reverse a judgment of conviction of plaintiff in error for the crime of robbery. The prosecuting witness, Henry Millhouse, testified that on the morning of the fourth day of October, 1901, about ten minutes before five o'clock, soon after he had opened his saloon, he saw plaintiff in error coming across the

room toward the bar, and another man, whom he was unable to identify, standing in the doorway; that witness went behind the bar as if to wait on them as customers, and when plaintiff in error also started to come around the bar, witness met him at the end of the bar and took hold of him, when the plaintiff in error presented his revolver, first at his body and then at his head, and told him to stand there; that he obeyed, and plaintiff in error then stooped down behind the bar and took $120 in money from a cigar-box, where it was kept; that the man at the door also pointed a revolver at him; that the men had handkerchiefs tied over the lower part of their faces, and when plaintiff in error stooped to get the cigar-box containing the money, the handkerchief came down partly off of his face, so that he was able to identify him; that the plaintiff in error had been in his saloon two or three times a few weeks before, and once when the witness was making change and taking money from the cigar-box the plaintiff in error was standing at the bar. The witness positively identified the plaintiff in error as the robber who took the money but could not identify the one who stood at the door. There was no other evidence offered by the People.

Plaintiff in error, as a witness in his own behalf, testified that he had been in Millhouse's saloon a few times, but that he was not there when any money was taken, and never took any money from there, as testified to by Millhouse; that on the morning of the alleged robbery he was at home in bed, and did not get up that morning until nine o'clock; that he was at the woman's house where he was boarding, and was not out of her house that morning until after nine o'clock. She, and her daughter, thirteen years of age, and her son, older than the daughter, gave similar testimony. The son testified that he slept in the same bed with plaintiff in error, and got up about twenty minutes after five that morning, leaving him in bed, and that after eating his breakfast he went

to his work.  Three witnesses testified that plaintiff in error had always borne a good reputation for honesty.

It is first assigned as error that the court should have granted a new trial because the verdict was against the weight of the evidence.  If that question depended on the number of witnesses testifying for or against the accused the error might be well assigned.  But it does not, and the jury and court below having seen and heard the witnesses testify, had far better opportunities than we have to judge of their credibility.  It seems clear that the witness Millhouse had a good opportunity to see, and every reason to remember, the robber whom he took hold of, and who put him in fear of his life by presenting at close range a revolver while he took his money.  He had seen the plaintiff in error in his saloon before,—once at the bar while he was making change from money in the cigar-box,—and his identification was as complete and unequivocal as the testimony of any one witness could make it.  It was for the jury to determine whether the witness was worthy of belief or was or was not mistaken.

It is urged that although the character and denominations of the money taken were alleged specifically in the indictment, these allegations were not proved on the trial.  While the indictment did so allege, it also contained allegations that the money taken consisted of national bank bills of divers national banks and United States treasury notes of divers denominations unknown to the grand jury, but alleging their value.  It is not important to consider whether the proof was sufficient on this point to sustain a conviction for larceny.  But the gist of the crime of robbery is the force or intimidation, and the felonious taking from the person of another, money or other thing of value against his will.  (Crim. Code, sec. 246; *Burke* v. *People*, 148 Ill. 70.)  We think that the proof made was sufficient as to the kind and value of the money taken to sustain the conviction for robbery. *Keating* v. *People*, 160 Ill. 480.

The most serious question arises on the alleged misconduct of the assistant State's attorney in persistently attempting, on cross-examination of the defendant when a witness in his own behalf, notwithstanding the adverse rulings of the court, to show or make it appear that the defendant had been living in an open state of adultery with the woman with whom he boarded. The court held the questions to be improper, and that the State could not lawfully procure a conviction of the defendant for one crime by proving another having no connection with it. The rulings of the court were entirely correct and no error was committed by the court. The only danger to the proper administration of justice in the particular case lay in the attempts of the attorney for the People, by his questions, asked in different forms but tending to elicit the same improper proof, and by improper remarks in connection therewith, to prejudice the jury against the defendant. The court should have summarily put an end to the line of inquiry pursued. But we must credit the jury with fair intelligence, and as the evidence, under proper instructions given by the court, was sufficient to warrant the finding of the defendant guilty, we do not regard it as our duty to set the conviction aside. We cannot say from the record that the misconduct of counsel complained of proceeded so far beyond proper bounds as to justify a reversal on that ground.

Complaint is also made of an instruction given at the instance of the People, which informed the jury of the nature and bearing of circumstantial evidence, and which stated that if the facts and circumstances shown by the evidence were sufficient to satisfy the jury, beyond a reasonable doubt, of the guilt of the defendant, then such evidence was sufficient to authorize a verdict of guilty. The point made against this instruction is, that there was no circumstantial evidence in the case. It was a circumstance to be taken into account with the other facts, that the defendant was, if the jury so believed, in

the saloon of the prosecuting witness a week or two before the robbery and saw how and where Millhouse kept his money. This and others were proper, at least in connection with the fact of identification. We see no error in the instructions.

The judgment must be affirmed.

*Judgment affirmed.*