

FILED

Apr 11 2019, 10:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dylan A. Vigh
Law Offices of Dylan A. Vigh, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Haile S. Long,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 11, 2019

Court of Appeals Case No.
18A-CR-2140

Appeal from the Delaware Circuit
Court

The Honorable Kimberly S.
Dowling, Judge

Trial Court Cause No.
18C02-1611-F2-18

**Pyle, Judge.**

# Statement of the Case

[1] Haile Long ("Long") appeals his conviction, following a jury trial, of eight drug related offenses. He argues that the trial court violated his Sixth Amendment right to a public trial. Specifically, he contends that the trial court's act of asking the public not to enter and exit the courtroom in the middle of testimony equated to a total exclusion of members of the public. Concluding that there was no Sixth Amendment violation, we affirm the trial court.

[2] We affirm.

## Issue

Whether Long's Sixth Amendment right to a public trial was violated.

## Facts

[3] In 2016, the Muncie Narcotics Unit ("MNU") conducted an investigation of Long using a confidential informant and four controlled drug buys. All of the controlled buys occurred at Long's auto business. After the fourth controlled buy, the MNU applied for, and was granted, a search warrant for Long's auto business.

[4] Based upon the controlled buys and what was recovered from the search, the State charged Long with the following: Level 2 felony dealing cocaine; Level 2 felony dealing a narcotic drug; three counts of Level 3 felony dealing cocaine; Level 5 felony dealing a Schedule IV controlled substance; Level 6 felony maintaining a common nuisance; and Class A misdemeanor dealing marijuana.

[5]     Long's jury trial began in May of 2018 and lasted three days. At the start of the second day of trial, the trial court noted that it had "put a sign on the door asking people not to enter and exit in the middle of testimony," explaining that it was "happening a lot yesterday and it was very distracting." (Tr. Vol. II at 130). The trial court also asked counsel for both sides to "police your own to the best of your ability" and asked the prosecutor's staff to "try not to leave in the middle of testimony." (Tr. Vol. II at 130). Long did not object or otherwise voice any concerns about this.

[6]     Shortly after the first witness began testifying on the second day, spectators entered the courtroom. The trial court interrupted the examination, stating, "[s]ir, sir there's a sign on the door that there's not going to be people entering and exiting during court, all right. So you guys can come in and have a seat but you stay until there's a break. I don't want people coming in and out during testimony today, all right. Thank you." (Tr. Vol. II at 133). During a break later that morning, the trial court stated:

> All right, some folks came in during some of that testimony after I gave an earlier admonishment. So let me just say this one more time, I don't want comings and goings during testimony today. It's very distracting. Yesterday was very distracting. So you can leave and come during breaks. If you are outside the courtroom and testimony has already started, you are to stay outside the courtroom until we take our next break when you can come back in, okay. And I would appreciate you not leaving in the middle of testimony just because it takes, you know, the attraction [sic] away from the witness, okay.

(Tr. Vol. II at 194-95). Long never objected or voiced any concerns about the trial court's statements.

[7] Following the presentation of evidence, the trial court took a recess before the start of closing arguments. It advised those present that there would be a 15-minute break and that there would be an officer "standing at the door." (Tr. Vol. III at 228). The court continued, "[i]f you're in here when closings start, fine. You're staying until they are over. If you're not in here when closings start, you're not coming in to listen to closings, okay." (Tr. Vol. III at 228-29). Long again did not object or voice any concerns about this. Thereafter, the jury found Long guilty as charged on all eight counts. The trial court sentenced Long to an aggregate, executed term in the Department of Correction for twenty-six-and-a-half (26½) years. Long now appeals.

## Decision

[8] Long argues that the trial court violated his Sixth Amendment right to a public trial.[1] Long is correct that the United States Constitution provides him with the right to a public trial. Specifically, the Sixth Amendment to the United

[1] In addition to the Sixth Amendment, Section 13 of the Indiana Constitution provides that "[i]n all prosecutions, the accused shall have the right to a public trial . . . ." While Long cites the Indiana Constitution, he makes no separate argument under the Indiana Constitution. Our supreme court has held that when a party, though citing Indiana constitutional authority, presents no separate argument specifically treating and analyzing a claim under the Indiana Constitution distinct from its federal counterpart, we resolve the party's claim "on the basis of federal constitutional doctrine and express no opinion as to what, if any, differences there may be" under the Indiana Constitution. *Williams v. State*, 690 N.E.2d 162, 167 (Ind. 1997).

States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." The right to a public trial has long been recognized as a fundamental right of the accused. *Williams v. State*, 690 N.E.2d 162, 167 (Ind. 1997). It protects the accused by allowing the public to assess the fairness of the proceedings. *Id*. A public trial helps ensure a fair trial because "the presence of interested spectators may keep [the accused's] triers keenly alive to a sense of their responsibility and to the importance of their functions . . . ." *Waller v. Georgia*, 467 U.S. 39, 47 (1984).

[9] The State argues that Long has waived his claim regarding his right to a public trial because he did not raise an objection below in the trial court. We agree. As a general rule, a party may not present an argument or issue on appeal unless the party raised that argument or issue before the trial court. *Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004). Because Long failed to object and preserve the issue at trial, despite having multiple opportunities to do so, he has waived consideration of this issue on appeal. *See Williams*, 690 N.E.2d at 166 (holding that because the defendant raised no objection to the use of a metal detector and wand below, his claim that this violated his right to a public trial was waived on appeal).

[10] Waiver notwithstanding, the record reveals no basis for Long's argument that there was a violation of his right to a public trial. Long argues that there was a "total exclusion of the public during witness testimony and closing arguments . . . ." (Long's Br. 12). The State argues that the "trial court did not exclude or bar any person, let alone the entire public, from observing any part

of the trial." (State's Br. 20). We agree with the State. Both a common sense reading of "exclusion," and, more importantly, the cases interpreting the right to a public trial, conceive of an exclusion as an affirmative act specifically barring some or all members of the public from attending a proceeding. *Williams*, 690 N.E.2d at 168 (citing *Waller*, 467 U.S. at 39). This exclusion requires some showing that the court, "by order or otherwise, physically prevented the public from attending." *Id.* (citing *United States v. Al-Smadi*, 15 F.3d 153, 154 (10th Cir. 1994) (denial of a defendant's Sixth Amendment right to a public trial requires some affirmative act by the trial court meant to exclude persons from the courtroom)).

[11] This case presents an issue of trial management, and a trial court is given latitude to manage the courtroom and maintain order and decorum. *Marcum v. State*, 725 N.E.2d 852 (Ind. 2000). Here, the trial court posted the sign asking spectators to only enter or exit during breaks precisely because the "comings and goings" of spectators proved to be "very distracting" and was "happening a lot" during testimony on the first day of trial. (Tr. Vol. II at 133, 130). No one was ever removed from the courtroom or prevented from entering. Indeed, the record reveals that members of the public came into the courtroom when the sign was on the door. Because the trial court did not engage in "an affirmative act specifically barring some or all members of the public[,]" nor did it physically prevent members of the public from attending, we hold that the trial

did not exclude any members of the public. *Williams*, 690 N.E.2d at 168.

Accordingly, Long's Sixth Amendment right to a public trial was not violated.[2]

[12] Affirmed.

Najam, J., and Altice, J., concur.

---

[2] To the extent that Long argues that the trial court failed to consider the four *Waller* factors set forth by the United States Supreme Court, this argument has no merit. Because we hold that the trial court did not exclude the public from the courtroom, this obviated the need for a *Waller* analysis.

Additionally, Long's argument that he did not voluntarily waive his right to a public trial is also without merit. The record is clear that Long received a public trial. Thus, Long did not waive his right to a public trial.